NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **TOM OHNTRUP, et. al.,** | : | **Civil Action No. 03-4891 (TJB)** |
| | : | |
| **Plaintiff,** | : | |
| | : | **OPINION AND ORDER** |
| **v.** | : | |
| | : | |
| **BRYAN GALLAGHER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### I.   INTRODUCTION

This matter comes before the Court on the motion of Third Party Defendant Armco Construction, Inc. (hereinafter "Armco") for summary judgment against Defendant/Third Party Plaintiffs Bryan Gallagher and Bryan's Quality Plus, Inc.'s (hereinafter "Gallagher") third party Complaint.   The parties and District Judge have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636 (c) and FED. R. CIV. P. 73.   For the reasons set forth below, the motion will be **DENIED**.

### II.   PROCEDURAL HISTORY

The underlying case involves a subrogation claim for property damage sustained by the fishing vessel Gin and Tonic when it was involved in an allision[1] with a submerged object, to

---

[1] An *allision* is a collision between a moving vessel and a stationary object.  2 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 14-2 n. 1 (4th ed. 2004).  Black's Law Dictionary defines *allision* as "the sudden impact of a vessel with a stationary object such as an anchored vessel or a pier." Black's Law Dictionary 28 (Bryan A. Garner ed., pocket ed., West 1996).

wit, a spud well[2], on August 22, 2000, in the back bay of Avalon, New Jersey, near 21ˢᵗ Street. (Armco Statement of Uncontested Facts ¶ 1).  The spud well had fallen off of a barge owned and operated by Gallagher. (Id.)  On April 27, 2001, Plaintiff Tom Ohntrup and his insurance carrier St. Paul Fire & Marine Insurance Company (hereinafter "Ohntrup"), filed a Complaint against Gallagher, Killam Engineering Associates and Armco.  (Civ. Action No. 01-2006, Docket Entry No. 1).   The Complaint sought reimbursement for property damages and loss of business sustained as a result of the August 22, 2000 accident.  (Id.)  Plaintiffs dismissed their claims against Killam Engineering and Armco on March 28, 2002.  (Id. at Docket Entry No. 13). Thereafter, on May 13, 2002,  Plaintiffs filed a notice of voluntary dismissal without prejudice. (Id. at Docket Entry No. 14).

On October 16, 2003, Plaintiffs filed the instant action against Gallagher, for reimbursement for property damages and loss of business sustained as a result of the August 22, 2000 accident.  (Civ. Action No. 03-4891, Docket Entry No. 1).  On April 21, 2005, Gallagher filed a Third Party Complaint against Armco seeking contribution pursuant to the New Jersey Joint Tortfeasors' Contribution Act and a claim for breach of contract.  (Id. at Docket Entry No. 8).  Armco filed its answer on June 8, 2005, with crossclaims for contribution, common law indemnification, contractual indemnification, and breach of contract.  (Id. at Docket Entry No. 12).  On March 13, 2006, Armco filed the instant motion for summary judgment (hereinafter "Moving Brief").   On April 10, 2006, Gallagher filed his opposition papers (hereinafter "Opposition Brief").  The Court requested supplemental briefing from the parties, which was submitted by Armco on June 22, 2006, (hereinafter "Armco Supplemental Brief") and by

---

[2]A spud well is an anchorage used during dredging to keep a barge stabilized. (January 27, 2006, Deposition of Bryan Gallagher 21:15-21).

Gallagher on June 28, 2006 (hereinafter "Gallagher Supplemental Brief"). Armco submitted a *sur reply* to their supplemental briefing, the substance of which was not considered for adjudication of this Motion. On September 18, 2006, the parties appeared for oral argument [See Docket Entry No. 23].   At this time, Gallagher withdrew his claims for contribution and indemnification without prejudice.

## III.    BACKGROUND

In November, 1999 Gallagher and Armco entered into a charter agreement wherein Gallagher agreed to rent a barge to Armco for $1,500 per month.   (Armco Statement of Uncontested Facts ¶ 6).   Armco agreed to maintain the barge and to name Quality Plus as an additional insured.  (Gallagher Statement of Uncontested Facts ¶ 5).   During the course of the charter Gallagher had access to and was still capable of using his barge.  (Armco Statement of Uncontested Facts ¶ 7).   Gallagher alleges that during the course of the charter Armco damaged its barge, including the spud well.  (Id. at ¶ 8).   The alleged damage included tearing off the spud well, damaging the side of the barge and cutting the spud.  (Gallagher Statement of Uncontested Facts ¶ 6).  Gallagher demanded that Armco repair the spud well and barge; However, the spud well repair was done poorly and the side of the barge was not repaired at all.  (Id. at ¶ 7).   In April, 2000 when the charter ended, Gallagher took possession of the barge with, what he believed to be, damage to the spud well. (Armco Statement of Uncontested Facts ¶ 10). Gallagher did not do anything to repair the allegedly damaged spud well from April to August of 2000.  (Id.)  Gallagher was not concerned that the spud well would fall off of the barge and felt that the barge was seaworthy to do certain jobs, including excavation work.  (Id. at ¶ 11).

On August 3, 2000, Armco contracted with Gallagher to excavate high spots in the Avalon Anchorage caused by Armco's dredging. (Gallagher Statement of Uncontested Facts ¶ 9). The contract called for payment of $2,500.00 per day for a minimum of three days, as well as $1,500.00 owed to Gallagher for prior work. (Id. at ¶ 9). After approximately three hours on the job, Gallagher's crew was asked to leave because the barge was not in an operating condition, the equipment and men were not qualified to do the job, and they failed to provide a certificate of insurance. (Armco Statment of Uncontested Facts ¶ 14). Gallagher asserts that his men were qualified and equipment was up to the required specifications to meet his obligations under the contract. (Affidavit of Gallagher at ¶ 4). Gallagher is unsure of whether the spud well was on his barge on August 3, 2000, and does not know when the spud well came off of the barge. (Armco Statment of Uncontested Facts ¶ 15). No payment was made by Armco to Gallagher under this provision of the August 3, 2006 agreement, nor the provision for payment of $1,500.00 for work previously performed.

## IV.   DISCUSSION

### A.   Choice of Law

During oral argument held on September 18, 2006, the parties agreed that Federal Admiralty and Maritime law applies. This Court concurs. Article III of the United States Constitution defines the boundaries of subject matter jurisdiction for the courts. The corpus of admiralty law has developed from Article III, Section 2 which extends the judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. CONST. ART. III, §2. The Constitutional grant was explained in Chisolm v. Georgia, 2 U.S. (2 Dall.) 419, 475 (1793), "Because, the seas

are joint property of nations, whose right and privileges relative thereto, are regulated by the law of nations and treaties, such cases necessarily belong to national jurisdiction."

In modern times, Congress has codified jurisdiction over admiralty cases in the Federal Courts via the provisions of 28 U.S.C. § 1333.  The statutory formulation grants original jurisdiction over any civil case of admiralty or maritime jurisdiction.[3]  28 U.S.C. § 1333(1). Through this statutory grant, federal courts have played the leading role in creating the body of substantive rules referred to as the "general maritime law."  Robert Force, An Essay on Federal Common Law and Admiralty, 43 ST. LOUIS U. L.J. 1367 (1999).

To aid in the identification of admiralty cases, Plaintiffs may choose to invoke FED. R. CIV. P. 9(h) in their Complaint.  "Rule 9(h) comes into play particularly when a claim has more than one basis of federal jurisdiction to permit the plaintiff to choose the procedural consequences of a civil or admiralty action." 2 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 21-1 (4th ed. 2004) (citing Carey v. Bahama Cruise Lines, 864 F.2d 201, 206 (1st Cir. 1988)).  Federal Rule of Civil Procedure 9(h) states in part: "If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not." Count One of Ohntrup's Complaint invokes the jurisdiction of Rule 9(h)[4].

In his Answer, Gallagher admits that this is a case of admiralty and maritime jurisdiction. (Docket Entry No. 4 at ¶ 1).  Although Gallagher did not invoke FED. R. CIV. P. 14 (c) when impleading Armco, it is apparent from the language of the Third Party Complaint that this was

_____

[3] In current usage the terms "admiralty jurisdiction" and "maritime jurisdiction" are used interchangeably.

[4] The Court notes that there is no right to jury trial in an action brought under admiralty jurisdiction. Ohntrup's invocation of Rule 9(h) in his Complaint affirmatively waives his right to a jury trial. See generally Waring v. Clarke, 46 U.S. (5 How.) 441, 460 (1847).

his intention.  Rule 14(c) allows a defendant in an admiralty action to implead another party who may be liable *either* to the original plaintiff or to the defendant.  *See* Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha, 342 F. Supp. 292, 297 (S.D. Tex. 1972) (holding that it is sufficient that the defendant claim a right of indemnity against the third party defendant for proper impleader under FED. R. CIV. P. 14 (c)).  See generally 29 MOORE'S FEDERAL PRACTICE 3D §704.06 [1].

In addition to determining whether litigants pled the specified Federal Rules invoking the court's admiralty and maritime jurisdiction, the Court may also find that admiralty and maritime jurisdiction apply to a tort claim if (1) the tort occurs on navigable waters and (2) the tort bears a substantial relationship to traditional maritime activity.  Grubart v. Great Lakes Dredge Dock Co., 513 U.S. 527 (1995).  These are known as the (1) maritime locus or "location test" and (2) the maritime nexus or  "connection test".  Id. at 534.  A court applying the maritime locus test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.  The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865).  When applying the two part maritime nexus test a court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. at 527.  The court must then determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to the traditional maritime activity." Id.

The facts of this suit and allegations of the Complaint and Third Party Complaint readily satisfy the maritime locus test.  "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." The Plymouth, 70 U.S. at 20.  None of the parties dispute that the waters of Avalon Bay are

"navigable waters" and that both the Gin & Tonic and Gallagher's barge were "vessels" as defined under the maritime locus test.  See generally Escanaba & Lake Michigan Transp. Co. v. City of Chicago, 107 U.S. 678, 683 (1883).

The first part of the maritime nexus criterion looks to whether the "incident involved was of a sort with the potential to disrupt maritime commerce."  Grubart, 513 U.S. at 538.  This finding need not look at the "particular facts of the incident", but rather at whether the "general features of the incident were likely to disrupt commercial activity."  Id. (citing Sisson v. Ruby, 497 U.S. 358, 363 (1990); Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982); Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249 (1972)).  Following Sisson, the general features of the incident at issue here may be described as damage to a marine vessel in navigable waters through an allision with an unknown object, to wit, a spud well from Gallagher's barge. Cf. Grubart, 513 U.S. at 539; Foremost, 457 U.S. at 674.

The second part of the maritime nexus test questions whether the "general activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  Grubart, 513 U.S. at 539.  There are a multitude of cases that hold that the activities of both the Gin & Tonic and Gallagher's barge show a substantial relationship to traditional maritime activity.  See Calhoun v.Yamaha MotorCorp., U.S.A., 216 F.3d 338, 345 (3d Cir. 2000) (holding that even a "pleasure craft that is almost exclusively used for recreational purposes ... bears some relation to the traditional maritime activity");   In re The V-14813, 65 F.2d 789, 790 (5th Cir. 1933) (stating that "[t]here are many cases holding that a dredge or a barge ... employed on navigable waters, is subject to maritime jurisdiction...").

The invocation by Plaintiff of FED. R. CIV. P. 9(h), the imputed invocation of FED. R. CIV. P. 14(c) by Gallagher, and satisfaction of the locality and connection tests clearly show that

the issues and legal claims surrounding the incidents in question, as Justice Harlan stated, have a "genuinely salty flavor." Kossick v. United Fruit Co., 365 U.S. 731, 742 (1961). Therefore, the Court finds that maritime law applies to this matter.

### B.      Summary Judgment Standard

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Herse v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

The moving party bears the burden of showing that there is no genuine issue of fact and they will prevail as a matter of law, or that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Id. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden. Fed. R. Civ. P. 56(e). Rather, sufficient evidence to support a jury verdict in his favor must be produced. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The existence of a "mere scintilla of evidence in support of [a] nonmovant's position will be insufficient" to withstand a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether more than a scintilla is extant, a court must "not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).

### C.      Maritime Contribution and Indemnification

The first count of Gallagher's third party Complaint demands "indemnity, contribution or apportionment or responsibility" from Armco. (Third Party Complaint at ¶ 9).   During oral argument on September 18, 2006, Gallagher withdrew these claims without prejudice, conceding that they are not yet ripe.  Therefore the Court need not discuss the merits of these claims.

### D.      Breach of Contract

The second count of Gallagher's Third Party Complaint alleges breach of an August 3, 2000, agreement with Armco. The August 3, 2000 agreement contained two separate provisions, a charter party[5] and an agreement to pay $1500.00 for work previously performed. The Court will consider each in turn.

#### 1. Breach of Charter Party

The law governing any dispute among parties to a charter is the general maritime law. Kossick v. United Fruit Co., 365 U.S. 731, 742 (1961).  Although not specifically stated, the August 3, 2006 charter agreement can be characterized as a gross charter.  A gross charter is "a charter under which the shipowner provides all personnel and pays all expenses." Black's Law Dictionary 299 (7th ed. 1999).  Specifically, the charter states that Gallagher would "excavate high spots in the Avalon Yacht Club Area and the Anchorage Marine Area [for Armco] ... Cost for excavator, barge and crew (1 days work) is $2500.00 (a minimum of 3 days work)."  Third Party Complaint at Ex. B.  The parties do not dispute the validity of the charter; rather, Armco

---

[5] A "charter party" is a "contract by which a ship, or a principal part of it, is leased by the owner." Black's Law Dictionary 229 (7th ed. 1999).

asserts that "the contract was made void by [Gallagher's] inability to complete the work." Moving Brief at Ex. E ¶ 8.

Nor do they dispute that the work outlined in the charter agreement was not performed by Gallagher.  The issue is whether Armco's instruction for Gallagher to stop work was a breach of the charter party, or whether Gallagher breached the charter agreement by being unprepared and having unqualified workers.

It is well established that "[t]he most fundamental obligation of the shipowner under a charter party is to provide the vessel described in the contract." 2 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 11-8 (4th ed. 2004).  The warranty of seaworthiness is implied in every charter unless the parties stipulate otherwise.  Morales v. Galveston, 370 U.S. 165, 169 (1962), reh'g denied 371 U.S. 853 (1962) (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960)).  Besides the physical condition of the vessel, the warranty of seaworthiness requires that the vessel be "well equipped for the intended voyage and manned by a competent and skillful master of sound judgment and discretion." Tug Ocean Prince, Inc. v. U.S., 584 F.2d 1151, 1155 (2d Cir. 1978) (citing The Niagara v. Cordes, 62 U.S. (21 How.) 7 (1859) (string cite omitted)).  When a charter is improperly cancelled by a charterer, the shipowner may recover expectation damages, to wit, the difference between what he actually earned and what he would have earned under the charter.  United Transp. Co. v. Berwind White Coal Mining Co., 13 F.2d 282, 284 (2d Cir. 1926); See Phila. & G.S.S. Co. v. McCauldin, 202 Fed. 735, 736 (3d Cir. 1913); Gardner v. The Calvert, 253 F. 2d 395 (3d Cir. 1958).  On the other hand, when the vessel is unseaworthy or the shipowner breaches the charter, the charterer is free from liability and may also be entitled to damages.  See Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d

304, 317 (citing The Ada, 239 Fed. 363, 364 (S.D.N.Y. 1916) rev'd on other grounds 250 Fed.

194 (2d Cir. 1918)).

In order for Armco to prevail on summary judgment of Gallagher's breach of the charter

party claim, Armco must show that either Gallagher breached the charter party or that the

contract was mutually rescinded.  Armco asserts that Gallagher was unprepared for the job and

his crew was not qualified to run the excavator required for the job.  Moving Brief at 12.

Pursuant to Tug Ocean Prince, Inc., 584 F.2d at 1155, Gallagher's crew's lack of qualification

would breach the warranty of seaworthiness and the charter agreement with Armco.  See also

Phila. & G.S.S. Co., 202 Fed. at 737.  However, to reach this conclusion, Armco must first

establish that Gallagher's crew was not qualified to perform the chartered work, or that

Gallagher's barge lacked the proper equipment necessary for the job.  The Court cannot reach

this conclusion from the material presented by the parties.  Contrary to Armco's assertions,

Gallagher certifies that "Quality Plus, its men and equipment, were qualified to perform the

work that [was chartered]."  Affidavit of Bryan Gallagher at ¶ 4.  If viewed in a light most

favorable to Gallagher, the factual disputes of whether Gallagher's crew was qualified to

perform the contracted work, and whether Gallagher's barge had the proper equipment are

material issues of fact that preclude a granting of summary judgment.  Therefore, Armco's

Motion for Summary Judgment related to the charter party agreement between the parties is

DENIED.

    *2.  Monies due and owing*

The charter agreement between Gallagher and Armco also contained a clause regarding

payment for work previously performed.  "An additional $1500 balance is to be paid for work

previously performed for Avalon in addition to the above."  Third Party Complaint at Ex. B.

There is no indication, nor have the parties alleged, that this clause relates to anything other than the payment of monies due for previously performed work.  The parties do not dispute the validity of the clause, nor does Armco even mention that it disputes that payment was necessary. Armco merely mentions, in a *sur-reply* to its Supplemental brief, that "Gallagher has failed to put forth any evidence to support his claim for an additional $1,500.00. [Gallagher] does not even know why this amount was allegedly owed."  Because this clause of the contract does not meet the maritime locus and nexus criterion, it should be analyzed under the rubric of contract law.

The Court must first determine whether either party would be prejudiced if the clauses of the August 3, 2000 contract were separated.  "[I]f a contract is partially maritime and partially non-maritime, the court will entertain admiralty jurisdiction if the maritime and non-maritime portions of the contract can be severed without prejudice to either party."  JVC Americas Corp. v. CSX Int'l, Inc., 292 F. Supp. 2d 586 (D.N.J. 2003)(citing Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 881 (3d Cir. 1992).  In other words, the maritime and non-maritime portions of a disputed maritime contract can be severed from each other and each disputed portion can be adjudicated under the corpus of law in which it fits, as long as the severing does not result in prejudice to either party.  Although the August 3, 2006 contract was a charter party agreement, the clause regarding payment of $1500.00 is not clearly maritime in nature. Therefore, the Court finds that the maritime and non-maritime clauses of  the August 3, 2000 contract can be severed without prejudice to either party.

In his third party Complaint, Gallagher claims that Armco's failure to pay the $1500.00 was a breach of the August 3, 2000 contract.  In order to state a cause of action for breach of contract, Third Party Plaintiff must allege each of the following: (1) a valid contract existed

between Third Party Plaintiff and Third Party Defendant, (2) Third Party Defendant breached this contract, (3) Third Party Plaintiff performed under this contract, (4) Third Party Plaintiff was damaged as a result of Third Party Defendants breach.  See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003).  In the instant matter the parties agree that there was a valid and binding contract between Gallagher and Armco.  The parties also agree that Armco has not paid Gallagher as stipulated in the agreement.  The primary dispute is whether Gallagher performed under this contract.

During oral argument Armco asserted that Gallagher does not know why the money is owed, and that there was no consideration to form a valid contract, and that therefore this portion of the contract should be invalidated.  Gallagher counter-argued that there was consideration in the drafting of the document, because the charter party was contingent upon payment of the past-due money.  Gallagher further asserted that both parties know that the money is owed, so the specific service or agreement from which the debt arises is irrelevant to the validity of the contract.  Whether there was adequate consideration for the formation of this debt is a material issue of fact that cannot be determined by the information before the Court.  When the materials presented to the Court are viewed in a light most favorable to Gallagher, summary judgment in favor of Armco cannot be granted.  Therefore, the Court finds that summary judgement in favor of Armco is not appropriate at this time and the motion is DENIED.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, Armco's Motion for Summary Judgment is DENIED. It is therefore, on this 26th day of September, 2006,

ORDERED that Third Party Defendant's Motion for Summary Judgment [Docket Entry No. 19] on the Defendant/Third Party Plaintiff's claims of contribution and indemnification are WITHDRAWN WITHOUT PREJUDICE; and it is further

ORDERED that Summary Judgment for the breach of charter party claim is DENIED; and it is further

ORDERED that Summary Judgment for the breach of contract for payment of $1500.00 for work previously performed is DENIED; and it is further

ORDERED that the Clerk of the Court terminate the pending Motion [Docket Entry No. 19].


      s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**